John E. ROUSSALIS, II, Appellant (Defendant),

v.

APOLLO ELECTRIC CO., Appellee (Plaintiff).

No. 98–166.

Supreme Court of Wyoming.

April 27, 1999.

Mark W. Gifford, Casper, Wyoming, Representing Appellant.

Larry W. Harrington, Casper, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

John E. Roussalis II (Roussalis) appeals from a judgment entered by the district court in favor of Apollo Electric Co. (Apollo).

We affirm.

## ISSUES

Roussalis presents four issues for consideration:

1.  Did the trial court err in awarding unjust enrichment damages in the amount of $73,930.08 where the Appellee sued for breach of contract and accepted the benefit of a $43,673.15 partial summary judgment under breach of contract theory?

2.  Did the trial court err in awarding unjust enrichment damages in light of Appellee's unclean hands?

3.  Did the trial court err in the measure of damages applied to Appellee's unjust enrichment claim?

4.  Should the case be remanded to the district court with instructions to enter judgment against Appellee and in favor of Appellant for the $10,214.00 in carrying charges improperly assessed against, and paid by, Appellant on summary judgment?

Apollo did not present a separate statement of the issues.

## FACTS

This dispute has its genesis in an October 1995 fire at the Aristo Building located in Casper, Wyoming. The Aristo Building, which was partially owned by Roussalis, contained several businesses on the ground floor with residential apartments on the upper level. The post-fire inspection by the City electrical inspector culminated in a determination that the entire building's electrical system should be re-wired. Apollo was contacted to provide the necessary re-wiring work and began the project in November of 1995.

The subsequent dispute and legal proceedings associated with the work on the Aristo Building were virtually guaranteed by the fact that no written estimates, bids, work orders, or contracts for the electrical work ever were created by the parties. As described by the trial judge in the Findings of Fact, Conclusions of Law, and Judgment, the testimony offered by the parties on the discussions between them "relative to [the] estimated costs, ongoing costs, performance of the electrical work, difficulties with the performance of the electrical work, requirements of the electrical work to be performed to assure that the building would pass inspection by the City of Casper, discounts on the materials and/or labor to be furnished on the project, and limitations or caps on the dollar amount to be charged by [Apollo] for the labor and materials furnished on the project" was, to say the least, "inconsistent, diffuse, and contradictory."

What is undisputed is that Apollo worked on the project over a period of approximately four months, and submitted six billing invoices to Roussalis as follows:

| Invoice Date | Amount |
| --- | --- |
| 12/15/95 | $10,114.94 |
| 12/29/95 | $10,698.04 |
| 01/26/96 | $13,112.31 |
| 02/09/96 | $11,839.79 |
| 02/23/96 | $ 7,890.96 |
| 03/29/96 | $22,356.76 |

In total, Apollo billed $76,012.80 for the work on the Aristo Building.

Roussalis did not pay any of the bills, although he did initial a January 31, 1996, billing statement that summarized the first three billings totaling $33,925.29. Confronted with Roussalis' failure to pay, Apollo filed an action in the district court on July 1, 1996, for the recovery of $75,998.84 for "goods and services delivered to" Roussalis. On February 12, 1997, Apollo filed a motion for summary judgment on its claim.

The district court granted a partial summary judgment on April 23, 1997, concluding that, by initialing the January 31, 1996, billing summary, Roussalis had agreed to pay the first three invoices. Judgment was entered against Roussalis for the $33,925.29, along with a carrying charge totaling $9,747.86, for a total of $43,673.15. The district court denied Apollo's summary judgment motion for the remaining three invoices

on the grounds that there were issues of material fact remaining on those claims.

Prior to trial on the remaining invoices, Roussalis paid $44,139.29 in satisfaction of the partial summary judgment. A bench trial on the remaining claims was held on February 2, and 3, 1998. At the commencement of the trial, the district court noted that Apollo's proposed findings of fact and conclusions of law suggested that the theory of recovery was unjust enrichment. The district court stated that the complaint indicated Apollo was proceeding under a contract theory, but, based upon the fact that a pleading may be amended to conform to the evidence, the district court concluded that an unjust enrichment claim was within the purview of the general complaint.

As previously noted, the presentation of consistent facts was marred by contradictory testimony from the parties regarding what was said by whom in relation to the work that was performed on the Aristo Building. In general, Roussalis' position was that Apollo consistently exceeded its estimated costs for the project. In addition, Roussalis introduced evidence that Apollo had charged for hours which were unsupported by time sheets, and that the authorization for the carrying charge on January 31, 1996, was stamped on the billing summary **after** Roussalis initialized it. In contrast, Apollo introduced evidence that it had never given a definitive estimate of the cost of the project, and that Roussalis, aware of the ongoing costs, never told them to cease working. Indeed, Apollo offered testimony that Roussalis simply conveyed to the company the message to "get the work done" and to do the work necessary to "bring the building up to code."

The district court concluded that the services and materials furnished by Apollo were accepted, used, and enjoyed by Roussalis and, consequently, Apollo was entitled to recover the last three invoices under a theory of unjust enrichment. The total of the three invoices of $42,087.51 was offset by the labor costs that were unsupported by time cards. In addition, the district court concluded that the carrying charge to the January 31, 1996, billing summary, which was the subject of the partial summary judgment ruling, was

added after that document was initialed by Roussalis, and, therefore, the recovery was further offset by the amount attributable to the carrying charge. After taking into account the offsets and the amount already paid by Roussalis, the district court awarded Apollo an additional $29,791.51, plus costs and interest at the legal rate from the date of judgment until paid.

## STANDARD OF REVIEW

The trial court made express findings of fact and conclusions of law. The factual findings of a judge are not entitled to the limited review afforded a jury verdict. *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo.1993). While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. *Id.* Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail weighing disputed evidence. *Id.* Findings of fact will not be set aside unless the findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* We review a district court's conclusions of law *de novo* on appeal. *Id.*

*Springer v. Blue Cross and Blue Shield of Wyoming,* 944 P.2d 1173, 1175–76 (Wyo. 1997).

## DISCUSSION

■ The first issue raised by Roussalis relates to the purported amendment of Apollo's pleading from a claim in contract to an equitable claim for unjust enrichment just prior to trial. Up to the time of the trial, the district court, and apparently Roussalis, considered Apollo's action to be one for breach of an implied contract. The district court's partial summary judgment implicitly awarded judgment to Apollo on the first three invoices based upon a contract created by Roussalis' initialing of the January 31, 1996, billing summary. Nevertheless, the district court concluded that unjust enrichment was

within the purview of Apollo's pleadings and allowed Apollo to proceed under that theory.[1]

On appeal, Roussalis contends that the district court erred in allowing Apollo to amend its pleading because the causes of action for breach of contract and unjust enrichment are mutually exclusive. Further, Roussalis claims that Apollo was barred by the doctrines of judicial estoppel, collateral estoppel, and res judicata from amending its complaint to one for an equitable remedy after initially electing to proceed under a contract claim.

■ Even if, as suggested by Roussalis, we assume that Apollo's complaint pleaded a cause of action in contract which was belatedly amended to an action for an equitable remedy, there is no error. A complaint may include alternative, independent claims as long as the factual allegations articulate the essential elements of the claims.[2] *Giacchino v. Estate of Stalkup,* 908 P.2d 983, 985 (Wyo. 1995); *see also* W.R.C.P. 8(e) (allowing pleadings regardless of consistency or whether based on legal or equitable grounds or both). Moreover, pleadings may be amended to conform to the evidence. W.R.C.P. 15(b).

■ In this case, the amendment resulted in a contract claim for the first three invoices, and an equitable claim for unjust enrichment related to the last three invoices. While Roussalis may be correct that a contract claim and a claim for unjust enrichment are mutually exclusive, that would be true only if they were being applied to the same set of facts. Simply because a relationship between parties is defined at least in part by a contract, does not necessarily mean that the entire course of dealings between the parties must necessarily be determined by contract law. If a plaintiff can present evidence of distinct, separate losses under an equity or tort theory sufficient to justify recovery beyond breach of contract, then it should be entitled to make a recovery so long as it is not duplicative or cumulative in na-

ture. *See Fox v. F & J Gattozzi Corporation,* 41 Mass.App.Ct. 581, 672 N.E.2d 547, 552 (1996) (holding that plaintiff had presented sufficient evidence to sustain causes of action for contract and unjust enrichment, but granting defendant's motion for judgment notwithstanding the verdict on the unjust enrichment, since otherwise there would have been a duplicative recovery).

■ Roussalis' second issue asserts that the district court erred in awarding unjust enrichment damages in light of Apollo's "unclean hands." Roussalis' claim is predicated upon evidence that (1) Apollo stamped a carrying charge on the January 31, 1996, billing summary after Roussalis initialed it, and (2) Apollo's charges for labor were in excess of the hours those employees actually worked. As a corollary to this argument, Roussalis also contends that if Apollo is not barred from recovery under "unclean hands," then the amount of recovery should be reduced by some unstated amount.

■ The doctrine of unclean hands is premised on the maxim that: "He who comes into equity must come with clean hands." *Harsha v. Anastos,* 693 P.2d 760, 762 (Wyo. 1985) (*quoting Dutch Maid Bakeries, Inc. v. Schleicher,* 58 Wyo. 374, 131 P.2d 630, 634 (1942)). A trial court's conclusions on issues of equity are factual determinations. *Harsha,* 693 P.2d at 762; *see also* 30A C.J.S. *Equity* § 102 (1992). As noted above, in a trial to the bench we will disturb the district court's findings of fact only if they are clearly erroneous. *Springer,* 944 P.2d at 1175–76.

■ The doctrine of unclean hands is not generally favored by courts. 30A C.J.S. *Equity* § 114 (1992). Relief may be given to a less than angelic plaintiff while at the same time fashioning a recovery which accounts for the asserted wrong. 30A C.J.S. *Equity* § 111 (1992). In this case, there was testi-

---

1. Our review of this issue is constrained somewhat because Roussalis apparently addressed this issue in his opening statement. Because the statement was not recorded, it is impossible to determine to what extent and on what grounds Roussalis objected, if indeed he even did, to this issue. Since we conclude that there was no error, we do not need to determine whether

Roussalis has waived this issue by failing to object or by raising it for the first time on appeal.

2. Roussalis has not presented any challenge to the complaint on the basis of an inadequate articulation of the essential elements of Apollo's claims.

mony from Apollo's bookkeeper to the effect that the carrying charge stamp and the extra hours charged were not deliberate but the result of simple mistakes. In any event, the district court took these overcharges into account and reduced the amount awarded to Apollo accordingly. Therefore, we find that the district court's decision was not clearly erroneous in light of the circumstances. For the same reason, we also decline to reduce the amount of recovery awarded by the district court as suggested by Roussalis.

Finally, Roussalis claims that the district court failed to reduce the award by the $10,-214.00 in carrying charges that he was erroneously ordered to pay pursuant to the partial summary judgment. The district court's order states:

21. The Partial Summary Judgment entered in this case on April 23, 1997, should be modified to provide for a partial summary judgment in favor of Plaintiff Apollo and against Defendant Roussalis in the sum of $33,925.29 alone, but Defendant Roussalis should be entitled to full credit for the $44,139.29 payment—$33,925.29 against the partial summary judgment, and $10,214.00 against the judgment hereinafter awarded.

22. Competent and persuasive evidence was presented at trial to establish Plaintiff Apollo's entitlement to an additional recovery under a theory of unjust enrichment for the services and materials furnished to Defendant Roussalis in the sum of $42,-087.51, on the last three invoices listed above ... less an adjustment and offset in the sum of $2,082.00 ... and further reduced by the sum of $10,214.00 previously paid by Defendant Roussalis in excess of the partial summary judgment as determined and calculated in paragraph 21 hereinabove.

Roussalis did, in fact, receive credit for the carrying charge, and his claim, otherwise, is without merit.

## CONCLUSION

The district court did not err when it amended Apollo's pleadings at the commencement of the trial, and its decision to award damages for unjust enrichment sub-ject to an appropriate reduction for unproven costs was not clearly erroneous.

Affirmed.